## In re SCHREIBER'S WILL.

### (*Surrogate's Court, Kings County.* April 5, 1889.)

WILLS—TESTAMENTARY INCAPACITY.

> Evidence that a testator was intemperate and was suffering from Bright's disease is not sufficient to show testamentary incapacity, where both subscribing witnesses testify that after testator signed the will he said that it was what he wanted, and it appears that he instructed one of the witnesses, a few days before, how to draw the will; that the will is signed in a firm, neat hand, and that testator bequeathed to his wife, from whom he had lived apart for some time, her dower right in his realty, and gave the residue of his estate to one in whose house he was cared for, for several weeks before his decease.

On application for probate of the will of Christian Schreiber, deceased.

*Charles Steckler*, (*Joseph Steiner*, of counsel,) for Christian Nicola, proponent. *George T. Gerlum*, for contestant Anna Schreiber. *George L. Cameron*, for contestant Barbara Dieter.

ABBOTT, S. Christian Schreiber, or Christian Schrieber, resided in Canarsie, in the county of Kings. For some cause, which does not appear, he had been separated from his wife (who was his second wife) for some time. He left no children or descendants. He died in the city of New York, on the 23d day of January, A. D. 1889, and left him surviving his widow, Anna Schreiber, and a niece, Barbara Dieter, his only next of kin. On the 26th day of December, A. D. 1888, he made and executed his last will and testament at Canarsie, in and by which he bequeathed to his wife, Anna Schreiber, her dower right in his realty, and the rest of his estate, both real and personal, to Christian Nicola, whom he ap-

pointed as executor. On the day he executed the will he afterwards went to New York city, in order that he might obtain better care and treatment, as he was then, and had been for some time, suffering from Bright's disease of the kidneys. He remained at the residence of Christian Nicola, in said city, until the 23d day of January, A. D. 1889, when he died. He appears to have dwelt alone at Canarsie, and was cared for and nursed for several weeks prior to his decease by the wife of the residuary legatee. He not been visited by his wife or his niece for a long time privious to his departure for New York. There is no proof offered showing that Schreiber was under any undue influence or unlawful restraint at the time of making the will, and the only ground upon which the contestants seem to rely was the lack of testamentary capacity. The subscribing witnesses testified fully to the performance of all the statutory requirements. The testator seemed to be fully aware of the contents of the will and of its effect.

Philip Mugler, one of the subscribing witnesses, testified: "*Question.* After he signed his name to it, did he say anything to you about that paper; did he tell you what it was after that? *Answer.* He said that is all right; that is the will he wanted to make." William H. Rogers, the other subscribing witness, also testifies: "*Question.* Did you read that instrument to Mr. Schreiber before he signed it? *Answer.* Yes. *Q.* What did he say after you read it to him? *A.* He said that was what he wanted." It also appears from the testimony of the last witness that Schreiber came to him a few days before the will was executed and gave him instructions how to draw the same. The evidence tends to show that Schreiber was an intemperate man, but it does not seem to me that his excesses, or the disease from which he was suffering, were sufficient causes from which to ascribe lack of testamentary capacity at the time he executed the will. The signature to the will is in a firm, neat hand, and shows no evidence of any unsteadiness on the part of the testator at the time of forming the same. To incapacitate one from making a will the intemperance must be such as to establish a total and permanent want of capacity. "Intemperate habits, and occasional fits of wildness, though indicating an impaired mind, do not establish a total and permanent want of capacity." *Julke* v. *Adam,* 1 Redf. Sur. 454. "The fact that a man is an habitual drunkard, and when drunk is *non compos,* does not invalidate a will." *Gardner* v. *Gardner,* 22 Wend. 526. I am satisfied from all the circumstances that this is such a will as the testator would naturally have made, and that when he made it there was no lack of testamentary capacity. The paper here propounded must be admitted to probate.